Nettie F. DECKER,
Administrator, Plaintiff,

v.

UNITED STATES of America, Griffin Bell, and the Department of the Army; Prudential Insurance Company of America; Connie K. Carver; Cassandra Traci Carver, Defendants.

No. C–2–79–41.

United States District Court,
S.D. Ohio, E.D.

Oct. 24, 1984.

MEMORANDUM AND ORDER

DUNCAN, District Judge.

This matter is before the Court on remand from the United States Court of Appeals for the Sixth Circuit for reconsideration on the issue of whether plaintiff has met the jurisdictional requirements of the Federal Tort Claims Act ("FTCA") 701 F.2d 176. More specifically, the question before the Court is whether plaintiff has satisfied 28 U.S.C. § 2675(a), which provides that final disposition of a claim against the government by the appropriate federal agency is a jurisdictional predicate to suit under the FTCA. A hearing thereon was held on September 21, 1984.

At the hearing, defendant objected to the admission of plaintiff's exhibits 1, 4 and 5 on the basis of relevancy. The Court reserved ruling on those exhibits, but now rules that plaintiff's exhibits are admitted *in toto*.

### Findings of Fact

On March 15, 1977, Lonnie K. Decker was killed while on active duty with the United States Army. Nettie Decker, the natural mother of the decedent, with the aid of Major John S. Fulton, her appointed "Survivor Assistance Officer," submitted claims for certain accrued death benefits, back wages, and benefits arising from decedent's Servicemen Group Life Insurance coverage.

The Office of Servicemen's Group Life Insurance ("OSGLI"), which administers the payment of the insurance benefits, is established as a part of the Prudential Life Insurance Company. Prudential provides coverage under contract with the Veterans Administration. OSGLI is responsible for the review of claims and resolution of controversial issues in regard to beneficiary entitlement.

On March 17, 1977, the Army issued a "Final Report of Casualty" which listed plaintiff Nettie Decker and Bernard Decker as "interested persons" with regard to decedent's death. Plaintiff received copies of

Donald Lynn Billman, Columbus, Ohio, for plaintiff.

Albert R. Ritcher, Asst. U.S. Atty., Roberta Y. Bavry, Larry J. McClatchey, Columbus, Ohio, for defendants.

the report in a letter dated March 24, 1977. The letter informed plaintiff that OSGLI administers payment of life insurance benefits and that all relevant documentation would be sent to OSGLI. Thereafter, the Army received information that decedent was survived by an illegitimate daughter, Cassandra Carver. The Army obtained this information from an insurance policy application signed by decedent, which named Cassandra as decedent's daughter and designated her a beneficiary.

On June 10, 1977, the Army issued a "Corrected Final Report of Casualty" which added Cassandra to the list of interested persons, and a Major W.L. England notified plaintiff of the change by letter dated June 23, 1977. Sometime in or around June of that year, Major Fulton contacted plaintiff and told her that he had lost the fight with Army higher-ups with regard to their decision to change the Report of Casualty, that he had done everything he could, and that plaintiff should consider obtaining private counsel.

Plaintiff thereafter contacted Vincent Ballard, an attorney practicing in Ohio. At the hearing, Ballard testified that he attempted to obtain a copy of the insurance application which listed Cassandra Carver as decedent's daughter. Ballard made several telephone calls to Texas during which he spoke with a Lieutenant John King. Lt. King apparently told Ballard that Ballard would have to ask OSGLI for the insurance application, that the Army's decision was final, and that plaintiff could sue if she was dissatisfied. Ballard then contacted OSGLI. OSGLI responded in a series of letters in which it stated that it had determined that Cassandra was eligible to receive the insurance proceeds, and that it would not furnish any of the documents or evidence upon which the decision was based.

OSGLI concluded that it would pay Cassandra the benefits unless plaintiff commenced legal action against Prudential Insurance within 30 days. Thereafter, Prudential did in fact pay the proceeds to Cassandra, apparently in reliance upon the Army's corrected casualty report and upon the insurance application and Cassandra's birth certificate allegedly listing decedent as the father.

On January 15, 1979, plaintiff commenced this action against the United States, the Department of the Army and Prudential, alleging that defendants had wrongfully withheld the benefits of the insurance policy, to which she, as the only lawful heir to the deceased, was rightfully entitled. On April 9, 1979, plaintiff filed an amended complaint which added Cassandra Carver and her guardian as defendants, and which for the first time alleged that by altering the decedent's military records to reflect that Cassandra is decedent's daughter, the Army violated § 1346(b) of the FTCA.

On June 13, 1980, this Court dismissed the portion of plaintiff's complaint seeking relief under the FTCA, and granted summary judgment for the defendants on all other issues. The Sixth Circuit Court of Appeals has remanded the case solely for reconsideration of whether plaintiff filed a "claim" within the meaning of the FTCA. This Court now finds that plaintiff did not file a claim pursuant to 28 U.S.C. § 2675(a).

*Federal Tort Claims Act Jurisdiction*

In order to institute an action against the United States a claimant must first present the claim to the appropriate federal agency. Title 28 U.S.C. § 2675(a) provides:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *unless the claimant shall have first presented the claim to the appropriate federal agency* and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any

time thereafter, be deemed a final denial of the claim for purposes of this section. (Emphasis added.)

■ The procedure outlined in § 2675 is jurisdictional, and no suit may be maintained under the Act absent compliance with this section. *Executive Jet Aviation, Inc. v. United States,* 507 F.2d 508 (6th Cir.1974).

The regulations promulgated under 28 U.S.C. § 2672 set forth the criteria for determining what constitutes a "claim" for purposes of complying with the administrative claim prerequisite of 28 U.S.C. § 2675. 28 C.F.R. § 14.2(a) reads as follows:

> For purposes of the provisions of 28 U.S.C. 2401(b) and 2672, a claim shall be deemed to have been presented when a federal agency receives from a claimant, his duly authorized agent or legal representative, *an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain* for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident. (Emphasis added.)

The principal tortious act alleged in plaintiff's complaint is the Army's issuance of a Corrected Final Report of Casualty on June 10, 1977. The issue at hand is whether plaintiff thereafter filed a "claim" for money damages incurred as a result of the report. Plaintiff does not contend that a Standard Form 95 was filed with the Army. The Court believes that the record is also devoid of evidence that any other written claim was thereafter filed with the Army. Plaintiff has introduced evidence that Attorney Ballard had several telephone conversations on plaintiff's behalf with Lt. King, and that during those conversations the change in beneficiaries was discussed. Such oral conversations do not rise to the level of "written notification of an incident." Plaintiff has also introduced into evidence three letters from OSGLI to Ballard stating that Cassandra would be recognized as decedent's child, denying Ballard's request for the documentation under- lying that decision, and stating that Prudential would pay the insurance proceeds to the child unless plaintiff filed suit against it within 30 days. *See* plaintiff's Exhibits 16–18.

Examination of the contents of these letters does not establish that plaintiff, through Attorney Ballard, did anything more than request the documents upon which OSGLI's decision was based. In fact, at the hearing Ballard testified that he did not want to make any claims until after he had had a chance to see the evidence, particularly the insurance application. Evidence was not introduced to show that, following the issuance of the Corrected Report, Ballard sent either the Army or OSGLI "written notification."

Additionally, plaintiff's oral communications with Army personnel reflected a dispute of a contractual nature, *i.e.,* plaintiff's rights under the decedent's Servicemen's Group Life Insurance policy. Even should the Court assume that a written claim had been filed with the Army, the Court finds no reason from the evidence on record to expect the Army to have realized that plaintiff was accusing it of a tortious conduct. *See Claxton v. Business Administration of U.S. Government,* 525 F.Supp. 777 (D.C.Ga.1981). In fact, even plaintiff's own legal counsel failed to consider such a claim, and it was not until the complaint was amended on April 9, 1979, that the issue of tortious activity was introduced into the present case.

■ In the Court's view, plaintiff's filing of the usual forms requesting benefits prior to the occurrence of any dispute thereon, and any oral inquiries made thereafter, simply do not rise to the level of formal written notice of a charge of tortious activity. *See Best Bearings Co. v. United States,* 463 F.2d 1177 (7th Cir.1972).

### Estoppel

■ Plaintiff contends that, even if a claim was not filed, the Army is estopped from asserting the jurisdictional defect because various government personnel repre-

44

sented that the Army had made an irreversible decision and that plaintiff had no viable remaining alternative other than to file suit. The Court finds this argument without merit.

There is evidence on the record to suggest that Major Fulton, Lt. King and Major England told plaintiff or plaintiff's agents that a final decision had been made, and that Fulton and King stated that plaintiff's best bet at that point was to sue. Plaintiff admitted at the hearing that the duties and authority of these men was unknown. In the Court's view, plaintiff, and plaintiff's counsel, did not have a reasonable basis to assume that these men represented the ultimate and final authority within the United States Army, or that any formal presentation of a complaint would have been ultimately sent to those three men; reliance on informal communications with these individuals was simply unwarranted. "[I]t is well-settled that the Government may not be estopped on the same terms as any other litigant." *Heckler v. Community Health Services,* — U.S. ——, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). "[T]he general rule [is] that those who deal with the Government are expected to know the law and may not rely on the conduct of government agents contrary to law." *Id.* 104 S.Ct. at 2226. The record does not establish that the Army personnel with whom plaintiff spoke had the authority to exempt plaintiff from the statutory requirement that she file a claim, and any reliance by plaintiff upon any such representation was unreasonable.

Additionally, plaintiff has not alleged that anyone told her not to file a claim, only that the decision was final and that a lawsuit was her best bet. In other words, nobody represented to plaintiff that if she elected at that point to seek a legal remedy she would be exempt from the statutory prerequisite that she file a formal claim.

Finally, even if members of the Army with authority to do so had represented that plaintiff did not need to file a § 2675 claim, any estoppel created thereby was later erased—defendants United States and

United States Army, in response to plaintiff's amended complaint which added charges under the FTCA, stated in their motion to dismiss or, in the alternative, for summary judgment, filed May 8, 1979, that plaintiff had not yet filed a § 2675 claim. Pursuant to 28 U.S.C. § 2401(b), the statute of limitations for filing a FTCA claim is two years. Since defendant's Army's allegedly tortious act occurred on June 10, 1977, plaintiff had until June 10, 1979 to perfect her claim. Therefore, when defendants gave plaintiff actual notice of the jurisdictional defect in their May 8 motion, plaintiff still had over one month in which to file a claim. Under the circumstances, plaintiff's estoppel argument is not well taken.

### Futility

Finally, plaintiff relies on a Fifth Circuit Court of Appeals decision, *Patsy v. Florida International University,* 634 F.2d 900 (5th Cir.1981), for the proposition that administrative exhaustion is not required if it would be futile to comply with the administrative procedures because it is clear that the claim will be rejected. Assuming that such a doctrine is applicable to the FTCA "claim" requirement, the Court simply does not believe that the evidence establishes that filing a formal claim with the Army in this case would have been clearly futile. More specifically, the Court is unconvinced that informal communications with three Army individuals whose authority in the realm of adjudicating formal claims was completely unknown established a sufficient basis for plaintiff to conclude that filing a formal claim was futile.

The Court finds that plaintiff's claim against defendants United States and United States Army alleging tortious conduct must be dismissed for failure of Federal Tort Claims Act jurisdiction. Defendants' motion to dismiss is GRANTED. This action is DISMISSED.